ROSE FURLONG v. THOMAS CARRAHER, Appellant

**Evidence:** OPINIONS. A non-expert witness cannot give her opinion as to the mental capacity of testatrix unless such opinion is based solely on facts relating to the conduct and action of the testatrix as detailed in the evidence of the witness.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

## FRIDAY, MAY 21, 1897.

THE parties, as indicated, are brother and sister, and children of Bridget Carraher, deceased, who died in February, 1894, leaving what purported to be her last will and testament, which was filed for probate; and the defendant, Thomas Carraher, is residuary legatee therein. The plaintiff contests the probate of the will by written objection, representing that Bridget Carraher, when she executed the instrument, was not of sound and disposing mind, and that the same was executed under undue influence by Thomas Carraher. The issues were submitted to a jury that returned a special verdict that Bridget Carraher was not, at the execution of the instrument, of sufficient capacity to make a will. The district court denied a motion to set aside the special verdict and grant a new trial, and entered judgment setting aside the will from which the proponent appealed.—*Reversed.*

*F. W. Dodson* and *A. A. McLaughlin* for appellant.

*Nugent & Connelly* for appellee.

GRANGER, J.—Bridget Lindsey and Mrs. Mary Wilson were witnesses for the contestant, and each gave evidence of having known the deceased,—the former all her life (being a niece), and the latter since 1869 or 1870.   Each testified particularly to Mrs. Carraher having been at her house in September, 1893; her death occurring in February after.   Each testified to her appearance as to health, how she appeared in mind, to what she said on different matters, to her changed appearance from former times, and to what she said about the disposition of her property, tending to show that she could not do as she would like to. The first of the following questions was asked of Bridget Lindsey, and the other of Mrs. Wilson:. "Q. Now, what do you say from your knowledge of her as you have testified, and from your acquaintance with her, and your conversations,—what do you say as to whether, in your judgment, she was sufficiently strong in mind to understand the value of her property, and the disposition to make of it in regard to the children, and the effect of the disposition of it upon her children, at the last time that she was at your house?" "Q. From what you saw of Mrs. Carraher on that occasion, in September, 1893, and from her actions and conduct, state whether, in your opinion, she was possessed of mind,—strength of mind,—enough to understand the effects of a will, and the results of a will upon her property and upon her children,—the making and executing of a will."   Answers were permitted against objections that they were incompetent.   The claim, in argument, is that the questions permitted the witnesses to base their opinions on facts not disclosed by the evidence.   The rule as first stated in this state is:  "The extent to which any of the authorities have carried the rule, even in the ecclesiastical courts of England, is that, after the witness

has stated the facts and circumstances, then his conclusion or opinion derived from or resting upon them may be given." *Pelamourages v. Clark,* 9 Iowa, 1. The rule as thus announced seems to have been clearly adhered to by this court. It is a rule as to non-expert evidence, forming an exception to the general rule of evidence, whereby statements of conclusions in the nature of opinions are limited to those who, by education or particular experimental knowledge, are deemed especially fitted to form such opinions. In *State v. Stickley,* 41 Iowa, 232, a witness, after narrating his observations of the person, was asked: "Will you state from your knowledge before, and your acquaintance with her from her conversation at the time and her looks at the time, whether, in your judgment, she was in her right mind?" The question was held incompetent, because it permitted an opinion based on facts not detailed to the jury. See, to the same effect, *Ashcraft v. De Armond,* 44 Iowa, 229. A case more clearly in point, is that of *Parsons v. Parsons,* 66 Iowa, 754 (21 N. W. Rep. 570, and 24 N. W. Rep. 564). The question was: "Now, Mr. Parsons, from what you heard Father Parsons say to other members of the family, and from what you observed there that morning, what do you think as to the condition of his mind that morning?" It is said in the opinion: "It will be observed that the question asked was not confined to facts to which the witness had testified," and the question was held improper. The rule has support in *Blake v. Rourke,* 74 Iowa, 519 (38 N. W. Rep. 392), and *Denning v. Butcher,* 91 Iowa, 425 (59 N. W. Rep. 69). It is further said in the *Parsons Case:* "The witness was permitted to exercise her discretion as to what facts and circumstances she should take into consideration." It seems to be the import of the rule that the jury shall know upon what facts the witness

bases the opinion given, and hence the question must in some way make the limitation, as by confining the answer or opinion to the facts as stated in evidence. The first clause of the question to Bridget Lindsey is limited, but the remainder of the question permits facts to be considered other than those testified to. The question to Mrs. Wilson is without any limitation to the facts testified to. If we treat it as limiting the answer to the occasion in September, 1893, the answer is not limited to the actions, conduct, and what was seen, as detailed in the evidence. We cannot assume that the evidence disclosed all the conduct and all that was seen. We think the rule of evidence was violated in the admission of non-expert evidence. The other question argued is as to the sufficiency of the evidence, of which we should express no opinion, in view of a new trial.—REVERSED.