Margaret DE BOLT, Plaintiff–Appellee,

v.

Henry Le Roy DAGGETT, Defendant–Appellant,

and

Albert Woods, Defendant–Appellee.

No. 86–733.

Court of Appeals of Iowa.

Sept. 30, 1987.

Michael W. Thrall of Nyemaster, Good, McLaughlin, Emery & O'Brien, P.C., Des Moines, for defendant-appellant Daggett.

Stephen D. Hardy of Grefe & Sidney, Des Moines, and Charles R. Turner, Des Moines, for plaintiff-appellee De Bolt.

John D. Hudson of Carney, Hudson & Williams, Des Moines, for defendant-appellee Woods.

Heard by DONIELSON, P.J., and SNELL and SACKETT, JJ., but considered en banc.

SACKETT, Judge.

In this case we address the issue of a truck owner's liability for a vehicular accident. Plaintiff-appellee Margaret De Bolt's car collided with a truck owned by Defendant-appellant, Henry Le Roy Daggett. Daggett's truck was placed in motion by Daggett's 15–year–old nephew Albert Woods.

De Bolt sued Daggett, as the owner, and Woods as the driver. Daggett claimed Woods was operating the truck without his consent. Daggett had left Woods in the truck while Daggett entered a business

establishment. According to Woods' testimony he started the truck to operate the heater. The truck went into the street and hit De Bolt's car. The case was tried to a jury. Special verdicts were returned finding Woods was negligent and Daggett had consented to Woods' operation of the truck. Judgment was rendered against Daggett and Woods in the amount of $36,170.36.

Daggett appeals alleging a series of errors.

### I.

We first address the issue of sufficient evidence to support a finding Woods had Daggett's permission to drive the truck at the time of the accident. Daggett's responsibility to De Bolt if any is premised on Iowa Code section 321.493, which provides in relevant part:

**Liability for damages.** In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage.

Daggett contends there is no evidence the truck was driven and the movement of the truck was only the result of Woods' operating the heater. The term "driven" is not statutorily defined. However, Iowa Code section 321.1(44) defines "driver" as "every person who drives or is in actual physical control of a vehicle."

The purpose of [Iowa Code section 321.493] is to protect an innocent third party from the careless operation of a motor vehicle and to make the owner responsible for the negligence of one to whom the owner entrusted its operation.

*Briner v. Hyslop,* 337 N.W.2d 858, 870 (Iowa 1983).

The fact the movement of the truck may have occurred while operating the heater should not absolve Daggett of responsibility. By prescribing the time, place, or purpose for which the vehicle can be used, the owner can escape liability if the driver deviates materially from the scope of the consent. *Briner,* 337 N.W.2d at 870 (citations omitted). However, the owner generally cannot avoid such liability for a mere devia-

tion from instruction on the manner in which the vehicle is used. *Id.* For example, the owner cannot escape liability by stating that if the driver exceeds the speed limit he is then driving without permission. Any other conclusion would allow the owner to escape liability in nearly every case by showing that some authority was violated. *Id.* Additionally, the evidence is Woods pled guilty to a series of moving violations following the accident including driving on a sidewalk, reckless *driving* and failure to have control. We reject Daggett's contention there is no evidence the car was driven by Woods.

### II.

Daggett argues there is no evidence he consented to Woods' operation of the vehicle. It is admitted Daggett is the owner of the vehicle. This is prima facie proof or creates an inference or presumption the truck was driven with his consent. The issue is then one of fact for the jury unless the evidence conclusively rebuts the inference of consent. *Tuttle v. Longnecker,* 258 Iowa 393, 399, 138 N.W.2d 851, 855 (1965); *McKirchy v. Ness,* 256 Iowa 744, 747, 128 N.W.2d 910, 912 (1964).

Daggett contends the evidence clearly rebuts the inference of consent. There is not much direct evidence in the record on consent. In fact, under the circumstances in this case, the plaintiff could not be expected to produce contradictory evidence of disinterested parties on the subject. The testimony of the defendants, however, against consent is not conclusive. It can be rebutted by circumstances, taken together with the reasonable or unreasonable character of their testimony. *Wolfson v. Jewett Lumber Co.,* 210 Iowa 244, 255, 227 N.W. 608, 612 (1929).

The issue is whether Daggett's evidence was sufficient, aided by the remainder of facts and circumstances demonstrated at trial, as a matter of law to overcome the presumption or inference of consent. *See Anderson v. Lehner,* 243 Iowa 851, 855–56, 52 N.W.2d 513, 515–16 (1952). The weak inference of consent which accompanies the

admission of ownership is to compel the owner to identify those operating the vehicle and explain by what authority, if not his own, it was being driven. *Hunter v. Irwin,* 220 Iowa 693, 698, 263 N.W. 34, 37 (1935). It does not alter the burden of proof. *McKirchy,* 256 Iowa at 747, 128 N.W.2d at 912. Nor does the inference require "every case shall go to the jury, where the undisputed and uncontroverted evidence establishes the facts so conclusively that the inference is overcome." *Curry v. Bickley,* 196 Iowa 827, 832, 195 N.W. 617, 619 (1923).

Woods stated he did not feel he had Daggett's permission to operate the truck. Woods is Daggett's fifteen-year-old nephew who was living with Daggett's parents at the time of the collision. Woods did not have a driver's license. Woods stated he had never driven the truck or any vehicle belonging to Daggett prior to the accident. Daggett contended when he left Woods in the truck he took the key from the ignition. Daggett contended he thought it was the only key. Daggett testified Woods took a spare key from the glove compartment. Daggett said he was not aware of the spare key in the truck's glove compartment. None of these facts were contradicted by direct testimony.

The defense of nonconsent is one which can be easily made, with little probability it can be met with direct refutation. It is not necessary plaintiff adduce direct testimony. *McKirchy,* 256 Iowa at 747, 128 N.W.2d at 912. The owners' testimony, though positive and direct, is not necessarily conclusive. It may be weakened or rebutted by facts and circumstances, or by its own inherent weakness or unreasonable character. The weight of the testimony and credibility of the witnesses depend upon facts and conditions as shown by the record in each case. This particular issue, as it comes before the courts, is one which the average jury is peculiarly well fitted to pass upon and arrive at a correct conclusion. *Id.*

Consent to operate can be implied. *Sexton v. Lauman,* 244 Iowa 570, 579, 57

N.W.2d 200, 205 (1953). 60A C.J.S. *Motor Vehicles* § 442(6), at 1063 (1969) provides:

> The owner may give another implied permission to use his motor vehicle without expressing such permission in words, as by leaving the ignition key in the lock. It has been held that the phrase "legally using or operating" refers merely to the legality of consent and not to the matter of absence of an operator's license, *so that the owner may be held liable for operation of the vehicle by one lacking a driver's license....*

(Emphasis added.) The test as to whether or not leaving the ignition key in the lock while the car is in charge of another lies in whether such circumstances would suggest to a reasonably prudent person that the automobile would be moved. *Id.* at 1063 n. 15.

We look at the direct evidence and inferences from facts and circumstances which rebut Daggett's evidence. *See Hunter,* 220 Iowa at 699, 263 N.W. at 37.

1. Woods was not a stranger to the vehicle. He was Daggett's nephew and was inside the vehicle with Daggett's permission and consent.

2. Daggett left Woods in sole possession and control of the vehicle while Daggett went in the business establishment.

3. There were keys left in the vehicle.

4. The accident happened within the area of the business establishment.

5. Woods in his statements does not corroborate Daggett's testimony the key used was in the glove compartment.

6. Both Woods and Daggett gave contradictory testimony.

We look at the reasonable or unreasonable character of defendant's testimony. *Wolfson,* 210 Iowa at 255, 227 N.W. at 612. The Minnesota court in interpreting a similar statute expressed the view perjury and collusion would be encouraged were an owner permitted to evade liability on the basis of asserted secret restrictions on the bailee's authorized use. *Hutchings v. Bourdages,* 189 N.W.2d 706, 709 (Minn. 1971).

We find the jury verdict to be supported by substantial evidence. We affirm the trial court on this issue.

### III.

■ Daggett contends the trial court erred in admitting the fact Woods was given citations for numerous moving violations connected with the accident. Woods pled guilty to the citations. Because Woods pled guilty to the citations they are an admission against interest and are admissible. *Martin v. Cafer*, 258 Iowa 176, 185, 138 N.W.2d 71, 77 (1965). Not only are they relevant to the issue of Woods' negligence, but the fact Woods pled guilty to a series of moving violations contradicts his testimony that all he did was start the truck to use the heater. We find no error on this ground.

### IV.

■ Daggett next complains the court erred in admitting evidence of his prior felony convictions.

Daggett pled guilty to false use of a financial statement, theft in the second degree and larceny. He sought in a motion in limine to exclude reference to these charges and claimed they were not admissible under Iowa R.Evid. 609. His motion was overruled. At trial without objection plaintiff asked Daggett about the charges and he admitted them.

Determination of whether the witness's prior felony conviction involves dishonesty or false statement and whether the probative value of admitting the evidence outweighs its prejudicial effect is within the sound discretion of the trial court. *See* Iowa R.Evid. 609(a); *State v. Latham*, 366 N.W.2d 181, 184 (Iowa 1985). We find no abuse of discretion.

### V.

■ Daggett contends the trial court abused its discretion in allowing De Bolt's doctor to testify as to the permanency of her injuries because there was no showing the doctor who testified on March 17, 1986, had seen De Bolt since July 1, 1983. He also contends the trial court erred in allowing the doctor to testify regarding his hospitalization of her because he did not have the hospital records. Where an objection goes to sufficiency of data upon which an expert bases his opinion as distinguished from facts which qualified him or her to state an opinion at all, the objection goes to weight but not admissibility of the expert's testimony. *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 165–66 (Iowa 1984). We find no abuse of discretion.

### VI.

■ Daggett claims the award of $36,-170.36 was excessive. De Bolt was rendered unconscious in the accident, she fractured C–5 vertebra, she was hospitalized, she wore a neck brace for two months, she lost approximately two months' wages, she had medical bills of about $2,200, she continues to have problems and there is evidence of permanency. A verdict will not be set aside as excessive unless it is "(1) flagrantly excessive or inadequate; or (2) so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption that it is the result of passion, prejudice, or other ulterior motive; or (4) is lacking in evidential support." *Schnebly v. Baker*, 217 N.W.2d 708, 724 (Iowa 1974) (quoting *Schmitt v. Jenkins Truck Lines, Inc.*, 170 N.W.2d 632, 659 (Iowa 1969)). It is not for us to invade the province of the jury. *Schmitt*, 170 N.W.2d at 659. We find no basis to set aside the verdict.

### VII.

■ Daggett contends the trial court erred in taxing certain costs to him. Daggett does not point out where the issue was raised in the trial court. We do not consider issues raised for the first time on appeal. *Federal Land Bank v. Heeren*, 398 N.W.2d 839, 841 (Iowa 1987).

AFFIRMED.

All Judges concur except SNELL and DONIELSON, JJ., who dissent.

SNELL, Judge (dissenting).

As I cannot agree with the majority's analysis of a dispositive issue raised by this appeal, I am constrained to dissent.

I cannot agree with the majority's conclusion that sufficient evidence supports the jury's resolution of the consent issue. Our courts have long held, in cases involving this statute and its predecessors, that consent within the statute's meaning need not be express but, rather, may be implied. *Eg., Sexton v. Lauman,* 244 Iowa 570, 579, 57 N.W.2d 200, 205 (1953). I find the following comprehensive discussion dealing with proof of the consent issue to be particularly instructive:

> We have frequently said the defense of nonconsent is one which can be easily made, with little probability it can be met with direct refutation. It is not necessary plaintiff adduce such direct testimony. When ownership of the motor vehicle is admitted, as it is here, a prima facie case is made on this issue by plaintiff, or as it is sometimes expressed an inference, or a presumption is created that the vehicle was being operated with consent of the owner, and there must be sufficient showing to the contrary if the owner would avoid that finding. Plaintiff may aid this inference of law by direct evidence and by proof of facts and circumstances from which inferences may be drawn. As we have said, this inference is not a strong one, and it in no way changes the burden of proof. The owner may oppose the inference by such admissible testimony as may be available to him. But such testimony, though positive and direct, is not necessarily conclusive. It may be weakened or rebutted by facts and circumstances, or by its own inherent weakness or unreasonable character. The weight of the testimony and credibility of the witnesses depend upon facts and conditions as shown by the record in each case. This particular issue, as it comes before the courts, is one which the average jury is peculiarly well fitted to pass upon and arrive at a correct conclusion.

*McKirchy v. Ness,* 256 Iowa 744, 747, 128 N.W.2d 910, 912 (1964). Daggett and Woods both testified that no express consent to operate the truck had been given. The issue accordingly becomes whether Daggett's evidence was sufficient as a matter of law to overcome the above-mentioned inference as aided by the remainder of facts and circumstances demonstrated at trial so that no question was presented to the jury. *See Anderson v. Lehner,* 243 Iowa 851, 854–56, 52 N.W.2d 513, 515–16 (1952). I believe it was.

Our courts have stated that the only purpose of the "weak" inference of consent which accompanies the admission of ownership is "to compel the owner to identify those operating the vehicle and explain by what authority, if not his own, it was being driven." *Hunter v. Irwin,* 220 Iowa 693, 698, 263 N.W. 34, 37 (1935). As noted above, it does not alter the burden of proof. *McKirchy,* 256 Iowa at 747, 128 N.W.2d at 912. In addition, the inference "does not require that every case shall go to the jury, where the undisputed and uncontroverted evidence establishes the facts so conclusively that the inference is overcome." *Curry v. Bickley,* 196 Iowa 827, 832, 195 N.W. 617, 619 (1923).

In the case at bar, both Daggett and Woods stated that no consent was given. In addition to his statement that no express consent was given, Woods stated that he did not feel he had Daggett's permission to operate the truck. Woods is Daggett's fifteen-year-old nephew who was living with Daggett's parents at the time of the collision. He did not have a driver's license. He stated he had never driven the truck or any vehicle belonging to Daggett prior to the accident. Daggett testified that he purchased the truck from a neighbor three days prior to the collision. Two days prior to the collision, according to Daggett, he had denied Woods's request to steer or guide the newly-purchased truck as it was pushed into a garage. Daggett testified that he was not aware of a spare key in the truck's glove compartment and that, when he left Woods in the truck, he, Daggett, took with him what he thought to be the only key—that from the ignition.

None of the above facts were contradicted by direct testimony. De Bolt was entitled, of course, to rebut this testimony by direct evidence or by inferences from facts and circumstances. *Hunter*, 220 Iowa at 699, 263 N.W. at 37. She relies on the following facts and circumstances upon which she claims the jury might rightfully base an inference that Daggett consented to the operation of the truck notwithstanding the testimony of Daggett and Woods to the contrary: (1) Des Moines Police Officer Dennis Baker, who was one of the officers investigating the collision, testified that he interviewed Daggett at the scene and that Daggett never mentioned that Woods did not have consent to operate the truck; (2) Daggett did not inform any officer at the scene that Woods had found spare keys in the glove compartment with which he started the truck; and (3) Woods never mentioned in his sworn statements that he had found the spare keys in the glove compartment.

Officer Baker's testimony is properly referred to as "negative evidence." Such testimony is that which states that a fact did not exist or that a thing was not done or did not take place. 30 Am.Jur.2d, Evidence, § 1092 at p. 252. The weight of such evidence is conditioned on a demonstration that the testifying witness was so situated that had the statement been made the witness would have heard it. *See Koll v. Manatt's Transp. Co.*, 253 N.W.2d 265, 271 (Iowa 1977). In the present case, Daggett testified that he had told an officer, other than Officer Baker, at the scene that Woods lacked consent to operate the truck. The record demonstrates that six or eight officers were present at the collision scene and that several of these had been present prior to Baker's arrival. Moreover, Baker did not testify that he had asked Daggett during the interview about Woods's consent, or lack of same, to use the truck. Consequently, I do not believe that Officer Baker's negative testimony supports, in any way, the jury's finding of consent.

A similar logic flaws De Bolt's inferential contention that because Daggett did not inform any officer at the scene that Woods used a spare key from the glove compartment to start the truck, the saga of the spare key is a ruse contrived after the fact in order to hide the fact that Daggett had left the keys in the ignition. De Bolt maintains this inferential contention that the keys were left in the ignition supports a finding of implied consent. His argument, however, overlooks a crucial fact revealed by the record: Daggett's testimony that he did not know of the existence of the spare key until Woods informed him of it the day after the collision. This testimony is not rebutted, or even met, by any record evidence. Although reasonable inferences drawn from affirmatively proven facts constitute evidence for the purpose of supporting a jury verdict, *e.g., Stickling v. Chicago, R.I. & P.R. Co.*, 215 Iowa 1312, 1315, 247 N.W. 642, 644 (1933), there are no facts in this record which would support the inference that De Bolt seeks to draw. De Bolt's argument is nothing more than "presumptions built upon other presumptions," *id.*, and, as such, lends no support to a finding of consent.

Likewise, I do not believe the jury finding is supported by the fact that Woods's statements make no mention of his finding the spare key in the truck's glove compartment. The two statements are short *verbatim* records of Woods being interviewed in a question-and-answer format by two separate investigators. At no time during the interviews was Woods asked about the key used to start the truck's engine. In light of the interviews' question-and-answer formats, I cannot allocate substantial weight to the absence of an answer to a question which was never asked.

In earlier cases tried under predecessors to section 321.493, our supreme court dealt with the quantum of proof necessary to take the issue of consent to the jury. In *Hunter v. Irwin*, 220 Iowa 693, 701, 263 N.W. 34, 38 (1935), the court found error in the trial court's denial of defendant's directed verdict motion, stating that "the evidence was not sufficient to warrant such a finding [of consent] by the jury, because 'verdicts must have evidence to support them, and must not be founded on mere theory or conjecture.'" (quoting *Boeck v.*

*Modern Woodmen*, 162 Iowa 159, 165, 143 N.W. 999, 1002 (1913)). *Cf. Omaha Indian Tribe, Treaty of 1854 with U.S. v. Wilson*, 575 F.2d 620, 642 (8th Cir.1978) (substantial evidence cannot be based upon inference drawn from facts which are uncertain or speculative and which raise only conjecture or possibility), *vacated in part on other grounds*, 442 U.S. 653, 99 S.Ct. 2529, 61 L.Ed.2d 153 (1979); *Elliot v. Iowa Dept. of Transp., Motor Vehicle Div.*, 377 N.W.2d 250, 356 (Iowa App.1985) (mere scintilla does not constitute substantial evidence). In *Anderson v. Lehner*, 243 Iowa 851, 855–56, 52 N.W.2d 513, 516 (1952), the court summarized the pertinent state of that case's record in the following manner:

> Here [the vehicle owner's testimony denying consent] is not rebutted by any facts or circumstances in the record. It is entirely consistent with usual and ordinary conduct. There is no testimony of [the driver's] prior use of the car under circumstances which would indicate [the owner's] knowledge of such use. There is nothing on which a jury could base an inference of consent. There is nothing in this case that indicates the testimony of lack of consent was improbable.

> \* \* \* \* \* \*

> Here there is nothing that rebuts the [owner's] testimony. There is nothing but the original inference of consent. Were we to hold a jury question was presented by the record here it would mean the inference alone is sufficient to generate a jury question. The trial court was right in directing the verdict for the owner, for the only *evidence* in the record was the evidence of nonconsent. When such evidence stands uncontradicted and unrebutted by any facts or circumstances indicating consent there is nothing for the court to do but direct the verdict.

> Similarly here, the only evidence produced at trial was that of nonconsent. I do not think the mere fact that Daggett left Woods alone in the truck supports a finding of consent. *Cf. Gibbs v. Wilmeth*, 261 Iowa 1015, 1026, 157 N.W.2d 93, 100 (1968) (mere presence in vehicle and momentary interference with another's control thereof held insufficient to establish one as vehicle's driver). This fact is particularly nonprobative of consent given that Daggett had no choice in the matter: Woods, a minor, could not accompany Daggett into his momentary destination, a tavern. I think the consent contemplated by the statute is an informed consent; it implies knowledge on the part of the person granting it. *See Hunter*, 220 Iowa at 701, 263 N.W. at 38; *McClellan v. Allstate Ins. Co.*, 247 A.2d 58, 60–61 (D.C.1968) (construing similar statute). There is no evidence of such consent being given in the present case. As was the case in *Hunter*, 220 Iowa at 701, 263 N.W. at 38, plaintiff's evidence here when "[c]onsidered in its most favorable light ... laid down only a foundation for conjecture as to [the vehicle owner's] knowledge or consent." This is not enough. I think the district court erred in denying Daggett's motions for directed verdict and for judgment notwithstanding the verdict. Accordingly, I would reverse the district court's judgment against Daggett.

DONIELSON, J., joins this dissent.